253 A.2d 233

STATE *vs.* JOSEPH M. REZENDES.

MAY 2, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

---

KELLEHER, J. This is a criminal complaint which charges the defendant with being a lewd, wanton and lascivious person in violation of G. L. 1956, §11-45-1, as amended. The defendant was found guilty in the fourth district court and was sentenced to serve 18 months at the adult correctional institutions. He took an appeal to the superior court where he filed a plea in abatement to the charge. The question raised by the defendant's plea was in the opinion of the superior court justice of such doubt and importance as to require determination by us before further proceedings in that court. Accordingly, he certified

for our determination pursuant to §9-24-27, the following question:

"May a defendant, consistently with Article I, Section 7 of the Rhode Island Constitution, be put on trial in the Superior Court upon a charge of being a lewd, wanton and lascivious person under Section 11-45-1 of the General Laws of 1956 except upon an indictment of a grand jury?"

The answer to the question propounded involves an analysis of Rhode Island's pertinent constitutional and statutory provisions, together with a review of past decisions of this court. The response will necessarily be predicated upon our determination of whether defendant has been charged with an infamous crime within the meaning of Article I, sec. 7, of the Constitution. The pertinent portion thereof reads as follows:

"No person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury, except in cases of impeachment, or of such offenses as are cognizable by a justice of the peace * * *."[1]

Section 11-45-1,[2] which proscribes defendant's alleged activity, gives the district court jurisdiction to try offenders under the act and sentence them for a period of up to three years incarceration at the adult correctional institutions.

In challenging the state's right to try him in the superior

---

[1] When the constitution was adopted in 1842, the justices of the peace were empowered under the Laws of Rhode Island 1822, pp. 148-149, to impose sentences of imprisonment not exceeding *one month*. (italics ours)

[2] Section 11-45-1 is very broad in its application. In addition to any alleged lewd and lascivious person, the following described individuals are subject to the imposition of a three-year prison sentence: "every idle person;" "every sturdy beggar;" "every tramp; every person wandering abroad and lodging in station houses, outhouses, market places, sheds, stables, or unhabitated building, or in the open air, and not giving a good account of himself;" "every peeping-tom;" "every person who shall go about from place to place to beg or receive alms;" "every person who shall neglect all lawful business and habitually misspend his time by frequenting houses of ill fame, gaming houses, or tippling shops;" and finally, "every common cheat, vagrant, or disorderly person."

court, defendant claims that he has been charged with an infamous crime and the court lacks jurisdiction to proceed without an indictment having first been brought against him. We agree.

At common law an infamous crime was regarded as an offense which brought infamy upon the person convicted, in that after conviction he was incompetent to testify as a witness or was deprived of his political rights. At that point in our history, an infamous crime was an act, the commission of which was inconsistent with commonly accepted principles of honesty and decency. Crimes considered infamous were treason, any felony and the crimen falsi. This latter term described offenses involving an element of falsehood and also included any conduct which tended to inhibit the administration of justice such as barratry, suppression of testimony by bribery, or the fraudulent making or alteration of a writing to the prejudice of another man's right. *Commonwealth* v. *Jones,* 334 Pa. 321, 5 A.2d 804; 1 Wharton, *Criminal Law and Procedure,* chap. 2, sec. 31, pp. 62-67; Perkins, *Criminal Law,* chap. 1, pp. 14-21. Thus, in this context it was the nature of the crime which determined its infamy.

Since conviction of crime is no longer generally considered as disqualifying a person as a witness,[3] the criteria for determination of infamous crimes have changed. Today, in most jurisdictions, the issue of whether or not a crime is one of infamy is resolved by a consideration of punishment which may follow upon conviction rather than the species of the alleged offense. See *United States* v. *Moreland,* 258 U. S. 433, 42 S. Ct. 368, 66 L.Ed. 700; *Mackin* v. *United States,* 117 U. S. 348, 6 S. Ct. 777, 29 L. Ed. 909; *Ex Parte Wilson,* 114 U. S. 417, 5 S. Ct. 935, 29 L.Ed. 89;

---

[3]Testimonial disqualification because of infamous conviction has generally been abolished by statute. 2 Wigmore, *Evidence* (3d ed.), §519; see also G. L. 1956, §9-17-15.

*State* v. *Nichols,* 27 R. I. 69, 60 A. 763; *State* v. *Nolan,* 15 R. I. 529, 10 A. 481; see also 24 A. L. R. 1002.

In *State* v. *Nolan, supra,* we first recognized that it was the penalty and not the nature of the offense which would determine its classification. We went on to say, however, that not every offense which is punishable by imprisonment should be deemed infamous. Later, in *State* v. *Nichols, supra,* we declared that the term "infamous crime" as used in Article I, sec. 7, refers to an offense which "* * * at any given time may be punished by imprisonment in the state prison for a term of one year or more * * *." This holding was somewhat modified in *State* v. *Bussay,* 38 R. I. 454, 96 A. 337. Bussay was found to be a lewd, wanton and lascivious person in the district court and sentenced to imprisonment for one year in the state workhouse. He took an appeal to the superior court where, after trial, he was found guilty. After the verdict was returned, he filed a motion to vacate the verdict questioning the court's jurisdiction to try him without indictment. The court declared that Bussay had not been charged with an infamous crime because the statute specifically stated that his sentence was to be served at the state workhouse and not at the state prison. Later, the decision in *In Re Brown,* 51 R. I. 139, 152 A. 694, affirmed this view that the place of detention is a valid consideration when determining a crime's infamy. Brown had been found guilty in the district court of behaving in a lewd manner and was sentenced to the Providence County jail for three years. He brought a petition for a writ of habeas corpus wherein he claimed that he was illegally detained because the statute under which he was sentenced, a predecessor to §11-45-1, provided for imprisonment at the state workhouse, and, at the time sentence was imposed, the legislature had abolished that facility. The court found this contention to be without merit. It held that although the legislature had not specifically deleted the reference to

the workhouse in the statute prohibiting lewd behavior, the general assembly intended that offenders thereof would, after abolition of the state workhouse, be confined in the county jail.

In our opinion, the place where a person may be confined has no bearing upon the determination of whether or not he has been charged with an infamous crime. What is significant, rather, is the potential punishment which might be inflicted upon conviction. Two of our statutes are of special concern here. In 1941, the general assembly enacted chap. 983 which is now known and cited as §11-1-2. It provides that any offense which may be punished by imprisonment for more than a year or by fine in excess of $500 shall be considered a felony. In addition, §13-6-2 states that any person who is imprisoned for more than a year at the adult correctional institutions for any offense shall be incapable of being elected to any office of honor, trust and profit and shall be unable to vote unless these privileges are expressly restored to him by act of the general assembly.

It is clear then that a person who fits within any of the numerous descriptions enunciated in §11-45-1, as amended, stands in a perilous position. He has been charged with an offense which the legislature has categorized as a felony and if he is sentenced to serve a term in excess of one year, he will lose his right of franchise and will be unable to seek public office without legislative reprieve. These statutory provisions show unmistakably that a charge under §11-45-1 is a serious matter.

In reaching our conclusion, we have been guided by the decisions of courts in jurisdictions having constitutional provisions similar to our own. Preeminent among these jurisdictions is that of the United States since the Fifth Amendment to the federal constitution contains language identical to that found in Article I, sec. 7. In determining

what constitutes an infamous crime under the Fifth Amendment, the federal courts were, at first, inclined to look to the nature of the offense. See *United States* v. *Reilly,* 20 Fed. 46 (C.C. Nev. 1884). Subsequently, however, the emphasis shifted solely to review of the mode of punishment provided. See *Ex Parte Wilson, supra; Mackin* v. *United States, supra; In Re Claasen,* 140 U. S. 200, 11 S. Ct. 735, 35 L.Ed. 409. Furthermore, it is now felt that the potential penalty, rather than that actually imposed must control. In *Ex Parte Wilson, supra,* at 426, the court stated:

> "The question is whether the crime is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one."

This rule represents what is essentially a common-sense approach. The potential penalty should be the deciding factor since the need for an indictment must be determined in the early stages of prosecution before trial. Another sound reason for characterizing crimes on the basis of the punishment prescribed and not the character of the act is found in the following portion of *Ex Parte Brede,* 279 Fed. 147, p. 150:

> "A crime which was considered 'infamous' at the time of the adoption of the Constitution may, at the present time, fall without that category, as the result of subsequent legislation following the trend of public opinion. On the other hand, a crime not known to the common law may have been defined by statute, or a new penalty may have been provided as to some crime previously considered trivial, and its classification as a felony or other infamous crime depends upon the possible scope of sentence at the time when it is imposed."

We find substantial support in the decisions of other courts for predicating a finding of infamy upon consideration of the nature of the punishment rather than the na-

ture of the offense. It is generally held in cases too numerous for citation that crimes for which confinement in a state prison or penitentiary may be exacted are infamous. See 21 *Words and Phrases,* pp. 539-557. Some courts have said that any crime designated as a felony is infamous. See *Ex Parte Westenberg,* 167 Cal. 309, 139 P. 674; *Truchon* v. *Toomey,* 116 Cal.App.2d 736, 254 P.2d 638. In other jurisdictions it has been decided that crimes which carry infamous punishment, even though they are designated as misdemeanors, must be considered infamous. See *United States* v. *Moreland, supra.* Finally, another line of decisions has held that any punishment which affects a person's political or civil rights is infamous. See *People Ex Rel. Akin* v. *Kipley,* 171 Ill. 44, 49 N.E. 229; *Ex Parte Autry,* 58 Okla. Crim. 88, 50 P.2d 239; *State Ex Rel. Stinger* v. *Kruger,* 280 Mo. 293, 217 S. W. 310.

In summary, it is plainly evident that the general assembly has turned a stern eye upon those who would contravene §11-45-1. By making its included offenses punishable by more than a year's imprisonment, the legislature has, by clear weight of authority, brought these activities beneath the infamous crimes umbrella. Essentially, in recognizing this we do no more than reiterate the holding in the *Nichols* case where the court concluded that crimes punishable by one year or more in the state prison were infamous. Having already indicated that we no longer feel that the locus of a prisoner's detention has any bearing upon his entitlement to an indictment, we now restate that holding. We hold that any crime punishable by more than a year's imprisonment is an infamous crime requiring an indictment.

We therefore answer the question certified to us in the negative.

The papers in this case with our answer to the question

certified are returned to the superior court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, *Luc R. LaBrosse,* Special Assistant Attorney General, for plaintiff.

*Aram K. Berberian,* for defendant.